IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 3:15-cr-00024-JO |
| v. | ) ) | |
| TODD ALAN NELSON, | ) ) | ORDER |
| Defendant. | ) ) ) | |

JONES, J.

  Defendant Todd Alan Nelson (Nelson) moves to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 40. Specifically, Nelson requests that his sentence be reduced to time served and that he be released to live with his daughter and her family. Nelson asserts that his medical conditions make him particularly vulnerable to the novel coronavirus pandemic. The government opposes his motion. Based on the following, the Court DENIES the motion.

  A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). However, Congress has expressly authorized a district court to modify a defendant's sentence in three limited circumstances, one of which is when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

  Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons (BOP), Congress expanded the statute in

1 Order

the First Step Act of 2018. Pub. L. No. 115- 391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018) (FSA). Now, a defendant may bring a motion for compassionate release, but only *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) exhausting all administrative appeals after the BOP denied the defendant's petition or (b) thirty days have elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[1]

Pursuant to the FSA, a court may reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling" other than providing that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t).

The pertinent policy statement by the Sentencing Commission for sentence reductions was last amended before the FSA passed and is found in Application Note 1 to United States Sentencing Guidelines (U.S.S.G.) § 1B1.13.[2] The Note[3] identifies extraordinary and compelling

---

[1] The government concedes that Nelson satisfied the requirement of first seeking compassionate release directly from the BOP.

[2] Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release . . . because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 89-cr-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (S.D. Iowa 2019) (canvassing district court decisions)) (quotation marked omitted). As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020).

[3] **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant.**—

reasons in four categories: (1) the medical condition of the defendant; (2) the age of the defendant; (3) family circumstances; and (4) other reasons as determined by the Director of the BOP in a defendant's case amounting to an extraordinary and compelling reason, other than, or in combination with, the reasons described in subdivisions (1) through (3).

Prisoners are exceptionally vulnerable to infection due to the lack of distancing and hygiene issues endemic to prison life. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* CDC (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detension.html. However, compassionate release is "rare and extraordinary" and

---

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

courts routinely deny such claims. *United States v. Mangarella,* 2020 WL 1291835, at*2-3 (W.D.N.C. Mar. 16, 2020.)

Nelson bears the burden to demonstrate extraordinary or compelling reasons justifying his compassionate release. 18 U.S.C. § 3582(c)(1)(A). He asserts that his medical conditions provide the reasons justifying release. Specifically, he contends that his asthma and chronic obstructive pulmonary disease (COPD) place him at a high risk of severe illness if infected with the novel coronavirus. Indeed, the CDC notes that people with COPD are at increased risk of severe illness from the virus that causes COVID-19, while people with asthma may be at increased risk of severe illness. People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (January 7, 2021). However, having a medical condition that might put him at increased risk, by itself, is not an "extraordinary or compelling" reason to justify Nelson's release. In addition to having a serious medical condition, Nelson must show that the medical condition substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

A review of Nelson's medical charts shows that he has been diagnosed with asthma and may have COPD. The first report of Nelson's respiratory difficulties is on April 30, 2020. Nelson told the doctor that every two or three years, he has difficulty breathing and that steroids usually remedy the problem. BOP Health Services Clinical Encounter, ECF No. 48 at 19. At the time of the medical exam, Nelson was not coughing and the doctor reported no crackles, rhonchi, wheezing or diminished breath sounds. The doctor advised Nelson to purchase over-the-counter allergy medicine. Id. At a June 19, 2020 medical appointment, Nelson presented with severe coughing and discolored mucus. After receiving breathing treatment, Nelson's breathing and

respiratory rate improved significantly and Nelson asked to return to his unit to rest. Id. at 14-18. At this encounter, the doctor prescribed a dose of steroids and by June 25, 2020, Nelson's symptoms abated. Id. at 21. As Nelson tapered off the steroids, the symptoms recurred and at a July 1, 2020 follow-up appointment, Nelson was put on an inhaler. Id. at 25. On July 20, 2020, Nelson presented with a cough and shortness of breath. He was given two nebulizer treatments and felt better. His coughing subsided and he felt well enough to return to his unit. The nurse who provided Nelson's care contacted the on-call doctor, who advised that he would adjust Nelson's prescriptions the following day. Id. at 32-33. On July 21, 2020 Nelson reported that that his symptoms were still present but had improved with the nebulizer. Nelson was again prescribed a dose of steroids. Id. at 30-31. A month later, Nelson's cough persisted and he reported that the steroids provided minimal relief. The doctor ordered a chest x-ray. Id. at 38. The x-ray showed that Nelson had mild hyperinflation and scarring of his lung tissue. The findings suggested a "degree of underlying emphysema." However, "[n]o evidence of acute disease is seen." Id. at 40. When Nelson was again seen by doctors on October 20, 2020 for a humming sensation in his leg, his respiratory complaints were resolved. He denied any new coughing or shortness of breath. He reported that he was not awakened at night by a cough; he had no exercise-induced cough, and no wheezing. Id. at 41.

As detailed above, the BOP appears to be managing Nelson's medical condition. Nelson's medical condition has not substantially diminished his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Thus, Nelson has not carried his burden to demonstrate extraordinary or compelling reasons justifying his compassionate release.

Even if Nelson had provided an extraordinary or compelling reason justifying release, his

release would not be "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). To warrant compassionate release, Nelson must show that he is not a danger and that the § 3553(a) factors support his release. Nelson pleaded guilty to possession with intent to distribute methamphetamine and use of a firearm in furtherance of a drug trafficking crime. ECF No. 31. Nelson had over fifteen pounds of methamphetamine, trafficked in heroin and LSD in addition to the meth, and possessed three firearms. He was sentenced as a career offender with a Total Offense Level of 34 and a Criminal History of VI. His guideline range was 322-387 months, and he received a below guideline-range sentence of 180 months. With a projected release date of November 10, 2027, Nelson has served less than half of his sentence.

While he claims his crimes were nonviolent, Nelson's possession of three firearms in furtherance of his drug trafficking put the community at risk. While his excellent compliance in prison and his participation in the prison's educational programming are to be commended, Nelson's release is not warranted under the § 3553(a) factors.

Nelson's Motion for Reduced Sentence (ECF No. 40) is DENIED.

IT IS SO ORDERED.

Dated the 8th of January 2021.

_____
Robert E. Jones
Senior United States District Judge